Can we call the next case please? 13-3397, People v. Henry Sandifer Would the attorneys presenting the argument please step forward, introduce yourself, and if you could spell your last name please, for the record. Ingrid Gill, Assistant Public Defender on behalf of Henry Sandifer, Your Honor. I did not write the brief. Mr. Ron Hayes retired in March of this year. So I've been assigned to take over the case, Your Honor. Thank you. John Walters, People v. State of Illinois. Good morning Mr. Walters. We've allocated 15 minutes aside. We're going to do our best with that. Ms. Gill, I assume you'd like to reserve a few minutes for rebuttal? 15 minutes includes the rebuttal, Your Honor. That's the plan, yeah. Don't always keep to it. Give me a moment just to set up, Your Honor. Take your time. Thank you. I'm going to try to do this tenuously. I would like to focus on the application of the rape shield in argument 1A and B and briefly address the prosecutor's fallacy. The dead cannot be humiliated. They cannot be harassed. Ms. Gill, the statutory construction on the rape shield statute, if we're going to review the statutory construction, that has to be de novo, correct? That is correct, Your Honor. Okay. So under the rape shield statute, if we're looking at it, your contention is even though thousands of cases have been prosecuted with both a murder and a rape charge, correct? No, there's not thousands. I found one, People v. Edward Johnson. I'm not talking about case law. I'm talking about 26th Street and every other suburban courthouse in this state. They have thousands of cases that have been prosecuted with both a murder and a rape. Is that correct? I would not know that. I don't practice at 26th Street. I'm a post-conviction attorney, so I'm speculating. I'm sorry. No, that's okay. I'm glad you told me that. Okay. So you're saying that rape shield just doesn't apply at all if the victim is deceased because of the statutory intent of preventing the humiliation of the victim. No, I'm using traditional interpretation. First, you have the plain language of Section A and B, which doesn't provide for prosecutions. In a prosecution for murder, when the commission of the murder involves criminal sexual assault, that language is missing. Now, if you read the plain language, even if you try to piggyback it based on Section 115-7.3, which is in Paragraph A of the statute, because the plain language in both A and B would actually tell, it seems to indicate that the victim is living, even if you include extrinsic statutory intent. It says to impeach the witness in the event that the prior sexual activity with the defendant is denied. Then you look at Section A. It says in prosecutions for battery and aggravated battery, when the commission of the offense involves sexual penetration or sexual conduct, the language for prosecutions for murder. Are you looking at 115-7? 115-7, the rape shield. In Section A, it says in prosecutions for aggravated criminal sexual assault, criminal sexual assault, aggravated criminal sexual abuse, criminal sexual abuse, or criminal transmission of HIV. And then it specifically sets out the legislature and the executive branch enacted a statute that specifically says in prosecutions for battery and aggravated battery, when the commission. What section are you looking at now? In A, if you finish reading the statute, it omits the language for prosecutions for murder when the murder was committed in the commission of a sexual assault. But if you look at 7.3, because the statutory scheme has to look, you have to look at it in a whole. And the legislature and the governor enacted amendment to 7.3. The state brought it up in their motion that they filed, motion to allow other crimes evidence, which is in the record at 153. And in paragraph, actually on page 4, on page 157, the state says 115 at the bottom of the page, .3 was expanded in 2008 by the legislature to include crimes of first degree murder and battery. Well, isn't the real just principle object of your defense here is that in order to present the defense here, this was one of those cases where the defendant needed to show there was sexual activity with others in order to show that someone else committed this. That was his defense. He didn't commit it. Somebody else did. And so he wanted to introduce the other evidence of sexual activity so he could present his defense. In fact, he wanted to present the fact that the three men who lived on the South Wallace Address, Larry Mays, Michael Mays, and Jeffrey Miles, they were all roommates. They were all dealing drugs. And they had done it over a period of time. Was there evidence of recent sexual activity with any one of them, though? I would say within the month, Jeffrey Miles. Okay. And so it shows a pattern and practice of criminal activity, and it gives all three men a motive to kill the victim. So would that be your – would your position be then that other provision of the Act that allows it where it's constitutional to get into this other sexual activity? I would say my philosophy is that the judiciary should refrain from legislating from the bench, and you have to respect the executive branch and the legislature. And in this case, they made provisions in 7.3 in 2008. And you can't just look at 7, the Rape Shield Act, because it incorporates 7.3. Okay. What was the change to 7.3 that you say suggests? But may I ask you before we get there? That will be the next question. Did the defendant present the argument to the trial judge that the statute should not be applied to deceased victims? No. He did forfeit it, and I have to address the plain error. Because it was – he actually asked the court to clarify. The State had filed a motion. So there was never this particular argument raised so that the trial court could have considered it and decided whether maybe this is a case where I should let it in or I should let it out. Actually, insofar as he argued in his motion for a new trial, I think he was implying – What did he say in the new trial motion? Paragraph 11, page 298. Do you want me to read the whole thing, Your Honor? Well, no. Just give me the idea. The State said that you didn't – that the State first points out that this particular argument, that the Rape Shield statute didn't apply to deceased victims, was not raised to the trial judge. One of the reasons that we expect and require error to be preserved is so that the trial judge can make a meaningful review of the issue. And therefore, later, we can make a meaningful review. So all I want to know is what did he – what actually did he say? He continued his objection in the fact that she had barred Jeffrey Miles from testifying to his prior sexual, let's say, bothering sex for drugs with the victim at the Wallace address. But she used the Rape Shield. And what I'm saying is that was wrong because of the plain language of the statute because it's silent. But even if you say, well, it's not silent, I say, well, look at the whole statutory scheme. And if you say, well, yes, it's silent, but we can read into it, then you have to respect the legislature. It was Governor Thompson, a Republican governor, and a Democratic legislature that went across the aisle and, in bipartisan support, created the Rape Shield, which circumvented the judiciary's rules of evidence. And what I'm saying is the only way it's ambiguous, if you give stand-in to the Thompson, the third – second district or third district, which I would say wasn't really addressed, that even the trial attorney and the appellate attorney in People v. Johnson never raised the issue as to whether this statute applies for prosecutions for murder when the murder was committed. And the commission of an alleged criminal sexual assault. And remember now, he was found not guilty. This evidence was very close. There's no overwhelming evidence that Mr. Sanford committed this. And, you know, getting into the plain error, there's a substantial fundamental right under Chambers v. Mississippi. And I realize that counsel – What was the relevance of this testimony? Forget about the Rape Shield. Let's say you were right about the Rape Shield. All three men had a motive. Because they – because one of them once had sex with the victim a month earlier? No, because Michael Mays punched the victim so hard that she fell down the front steps. But the jury heard all of it. The jury heard all of it. How does the sex – tell me how the part that was not allowed into evidence makes a difference here. In – under Chambers v. Mississippi, I think the jury could take notice that when a woman has sex with a man, even if it's for drugs, over a period of time, and she's had sex with what the defense was arguing was two men in the house, she gains an intimacy and an understanding of a criminal operation. There's drug dealing. There's massive amounts of crack because she's given – But they heard all that too. No, they didn't hear it from Myles. I mean, he was not able to present Myles because Myles would have corroborated the theory. And that is critical weight. I mean, you're infringing on his right to present defense when the woman is dead. Are we creating standing for victims who are dead? Because there is no privacy right. Is there really – is that really the only reason that the legislature created the – Yes, it is. You have to read the legislative history. All the law – Has there been any other cases interpreting the rape shield statute? I have not found it in Illinois. I am aware of a case going on in New Hampshire, but it's on procedural grounds, where Magalie – Well, the issue was, does the state have a compelling state interest in the privacy right or the privacy interests of a decedent in a murder, rape prosecution? But I think this is a – But I don't think we need to go outside the state. Didn't the Illinois Supreme Court also under – in Sandoval, didn't they say the exclusion of the rape shield evidence, the exclusion of that keeps the jury's attention focused on what's relevant in the case? So aren't they kind of saying or directly saying it's also a relevancy? No, because the murder prosecution was not presented factually in Sandoval. I mean, maybe I'm wrong, but I – But isn't one of the purposes of the rape shield statute to reject the old sort of Victorian notion that if – that if a woman on a previous occasion had consensually engaged in intercourse, that meant she probably did on this time too? I mean, it's not just to prevent humiliation, that's one of the reasons, no doubt, and a dead person can't be humiliated. Agreed. But I thought there was a bigger purpose that we just reject that as a relevant proposition now. That's only relevant to the rape. We have a murder prosecution. I'm sorry, but you have the rights, a fundamental, substantial, fundamental right of the living. And now the state is saying that the public policy of political correctness of the decedent. She's murdered. She can't testify. The dead do not speak. Couldn't the court have excluded this? I think Justice Ellis was sort of suggesting that. About the time frame we're talking about, is there any evidence of any actual sexual contact within, say, the 72-hour period? Well, yes. Oh, wait. Did the experts say it's about five days? You can have – semen can survive the medical examiner. About five days. Up to five days. All right. So was there really ever an offer of proof to actually establish that there was some kind of evidence to support that she had sex with the Miles brothers and the other gentlemen, you know, within the five days or no? Michael Mays was not tested. You know, he obviously didn't get – I can infer that he didn't consent. Yeah. The other two did. The other two wasn't. And her husband. Yeah. Yeah. And so here's the problem with autosomal STR DNA testing. The suspenders is the relevant evidence. That's the only physical evidence that the State is relying on to tie Sandiford to the murder. What's interesting about that testimony is if you look at it and you look at the reports, and the reports are attached to the motion for new trial, and I realize they're not certified. They're not self-authenticating. But the analyst didn't testify off the paper of his report. He never said there was a match between the six loci that were – he found. And when he compared it to six out of 13 of Sandford's genetic markers, he said he couldn't exclude them. And even on cross-examination, if I direct your attention to L45, the defense says, you're not here to say that you know that Henry's DNA is on there, correct? And the analyst, Ramos, says, correct. So here's our problem. We don't have Michael Myers' DNA. The jury sent out questions about that. Why don't we have it? Okay. The DNA can't even exclude – honestly, it can't even – Maria Centrone. Remember, all it can indicate is the gender from the amylogenin that there's a male and a female. The analyst even said there's up to five – you could actually have up to five contributors, again, because there were loci that had three. Could I ask you, just going back briefly to the evidence, there was evidence, though, that there was sexual contact between Mr. Sandiford and the victim. That's really not contested, is it? Well, it's not. It is by him. He said he didn't know her. No, there's a consent defense, and actually I don't think the court should go there since he was found not guilty of the murder. Okay. This is – Wow, that would be a whole different case. I wish it was. So we're limited – and that's the danger of when you start putting emphasis on the sex offense, when the jury rejects it and finds him not guilty, but you're trying to use the rationale that it still applies. The executive in the legislature branch did not put it in there. And I don't think – even though there's precedent to say, well, silence doesn't bind us, this goes too far because now you're reading into the statute a class of crimes. Did you say there's a case somewhere out of state right now that's considering the issue of whether or not the rape field statute should not apply to deceased victims? It was reported in the Huffington Post. I had a law clerk look it up yesterday. It's on procedural grounds. But in the footnotes, the ACLU came in on behalf of the decedent, the murder rape victim, to argue she had privacy rights and interests. Of course, in Illinois, those interests cease upon death. And so we're stuck in a balancing under Davis versus Alaska. Because, again, the Sixth Amendment right of confrontation applies to the states due to the due process clause. So what I'm saying is that the Illinois judiciary should refrain from legislating from the bench. Let's not get caught up in the rape. Can you refer us to some cases where this – are you aware of a case where the court allowed evidence of sexual conduct of a victim in a case? In Illinois. That suggests or supports what you want to do here. No, that's my problem. Because I'm not leaving Johnson as – Well, then, what is your understanding of the permission in the statute that says that it can be utilized, that that is evidence of other sexual contact with another person? But you have to – When constitutionally required. What is your idea of that? That the court cannot use that phrase to piggyback an exception. I think it's an abuse of authority. No, what you want to do is tell us why that applies. In other words, the statute allows it when the constitution would require it. Because I think the Executive Thompson and the original Democratic legislature and subsequent amendments have been made. They're aware of the – they're always present. Aren't there other cases, though, that have considered whether or not the court abused its discretion? And we're not – forget about any murder case, okay? We're cleaning the slate. Are you aware of actual sexual assault cases where the court denied a defendant the right to present evidence of sexual contact with another to dispute the charge of aggravated criminal sexual assault? I think there's cases that the courts have allowed in the prior sexual conduct and reputation to sustain – to allow, using the balancing test of Davis v. Alaska, in purely a sexual assault prosecution. Yeah. Did you cite any of those in your brief? They are cited. I cite those numerous cases, Your Honor. Where the court was found to abuse its discretion for not – It's way at the end. Oh. But here's the thing, Your Honor. That's definitely not controlling. No, I know. But it might help you if there were cases where the court was – allowed it. I just don't think there are any. No, my standing is that the judiciary should not legislate from the bench. We got you. Okay. If we find that the issue of whether the rape shield statute applies to a dead victim was forfeited, we're not going to – I'm not saying one way or another, but let's just pretend for now that that's what we decide, because it was never raised below. Then we move to whether the court abused her discretion in her interpretation of the rape shield statute, correct? Yes. Okay. So she allowed in the fact that this whole fight that went on with the Mays brothers and the victim, she allowed in the victim going in and having conduct with the defendant, and the defense was allowed to ask the witness, Maria Cintron, to describe the noises she heard, correct? That was what the court's ruling was. Except she couldn't lay in a layman's opinion that she thought it was sex. It's no sex noises, but you can – which that would be really fun for the jury to hear, I'm sure. But so where's the abuse of discretion on that one? Because the defense never asked the question then. Because this is a substantial fundamental right. I mean, if you're going to the – if you're going to play a – I mean, in that case, with that gentleman, Larry Mays, I mean, didn't the jury essentially hear that they had sex? I mean, isn't that pretty much the clear inference that they would have drawn? She needed – she wanted crack cocaine. He demanded money. She said, I don't have money. Then they went back into a bedroom for a while and came out, and she had crack cocaine. You didn't – you passed on the opportunity to ask what noises – to describe the noises. But nevertheless, isn't that a pretty – didn't you pretty much get that information in anyway? I think he still – his defense of the alternative suspects, because there's more than one, was infringed because the court is saying that, yes, there's a murder, but we're not letting you get into the sexual aspect of it. It was clearly a barter for sex. And that is – changed his whole ability to present. When you're – he's limited. I mean, Michael Mays and – or Larry Mays was actually subpoenaed to testify. And he did not present them because of the court's ruling that he couldn't really elicit to contradict that Mays – yes, he was excluded, but he could have had oral sex. He could have used a condom. It doesn't mean he didn't have sex with her. And he would have – Jeffrey Miles or Michael Miles – one of them. I'm sorry, I just can't remember. He could have impeached them as an adverse witness. This is a murder prosecution. This is the substantial fundamental rights of a living man to present the defense of the alternative suspect. So just so I understand – You're almost handicapped. You're tied with one hand behind your back. Counsel, just so I understand this, so your argument is that had the jury known that these two different people, Jeff and Larry, I think are their names, had engaged in intercourse in the past with the victim, that would have made them better alternative suspects? Yeah, it would have strengthened – because they could infer from common experience that men and women, when you have repeated intimacies, sexual intimacies, that these gentlemen could have explained to her. That they're more likely to drown more than they cure? I thought the point of trying to get that testimony in was to explain the defendant's lack of or denying that he knew her because it was more of an anonymous sexual intercourse. That's related to the rape charge. I'm sorry, rape. Criminal sexual assault. That it was sex for drugs. I mean – I thought the purpose of trying to get that out was trying to explain why the defendant's DNA was beyond her and yet he would be claiming that he had no idea who she was. I thought that the purpose of bringing all these other sexual charges – No, it was true. That was what was in your brief. It's true, but again, the closing arguments of the State, it's a murder-rape. You can't have the rape without the murder. Would there be a relevant timeframe? In other words, if the Court were to permit this, let's say – I mean, if we were to agree with your argument, wouldn't there have to be some proper offer of proof that within at least a couple of days they had sex with her? No, and that's – here's the problem I have. Forgetting about Rape Shield. No, it doesn't say a couple of days. Forgetting about Rape Shield. Forgetting about that. Here's my question. There is a rule about speculation, remoteness. You need an offer of proof when you're going to present a defense. Now, my question to you is that what kind of a timeframe are you suggesting? If we use just the scientific approach regarding the presence of semen, you know, it's going to be gone after five days. What was the proof that was – let's just – let's make a timeframe. We need a relevant timeframe. We can't have a year. We can't have six months. But if we have a couple of days, and even just if we have a couple of days or a week or something, what was the offer of proof? Who was going to testify? Was it Ms. Cintron then about the – No, it was Jeffrey Miles that the defense in his motion for a new trial – Miles would have said what? That he had had sex with her within the week. Okay. It was sometime in the previous month. Well, it's weeks and months, but you can infer. I mean, I think – That was as close as they came. It was sometime in the past weeks or months. That's a big span of time. But here's the thing. If it goes to the defense that they murdered her because they were trying to protect their criminal drug activity, which they'd been doing over a period of weeks, and Jeffrey Miles testified, and her sister said she would disappear on the weekends, and Marie Cintron indicated. So this woman was doing drugs in exchange for sex. Well, didn't the jury really know that? No, because I think they inferred – they could have inferred, but I don't think that was the reason why they found him not guilty of the sex. The problem was there was no sign of force in the sex, and the – again, the medical examiner said it could last up to five days under certain conditions. Optimal conditions is 72 hours. But again, here's the thing. Michael Mays punched her. There was evidence, and I think even under – when you go back, what the court should have ruled is under 403. And although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. That's what I'm saying the judge should have done. Yeah. One of the big problems with this case is that this kind of argument, you know, about the rape shield statute and that this should have all come in because this woman is dead and so the rape shield statute doesn't really serve to protect her or have anything to do with relevance or anything else, is that, you know, I know you read this motion for the new trial, but this argument about, well, let's let it in because she's dead, was never presented to the trial judge. And that's really a very significant problem here because nobody asked the judge to do this. Had someone made this request, then the judge could have reviewed it. It would be an evidentiary matter perhaps, might have been a question of law. But we don't have any information about this issue regarding what happened because no one actually raised this argument and now it's being raised to us for the first time because it really wasn't raised. Now, we can look at the motion for the new trial, but I really think we're going to have a problem here. And we do have a problem because the trial judge was never confronted with the issue. And one of the reasons we confront the trial judge with these issues is so that when it gets here, it's a little clearer maybe why it was ruled on one way or the other. So that's a big problem. I don't deny it isn't, but I also look that forfeiture by the plaintiffs, but it doesn't bother the court. And under Illinois Supreme Court Rule 615A, it permits a review in court to bypass normal rules of forfeiture and consider the plain errors or defects affecting substantial rights, although they were not brought to the attention. And you have that discretion. And then when it's appropriate, when there's a clear, obvious error occurred, and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant. Regardless of the seriousness of the error. Ms. Gill. Ms. Gill. Ms. Gill. Plus it's the abuse of discretion. Counsel. Yes, sir. I think we're going to stop for now and you'll have some time for rebuttal, okay? Thank you, Your Honor. Okay. Mr. Walters. May it please the Court, Assistant State Secretary John Walters, for the people. With respect to Issue 1, George Santayana said that those who forget the past are doomed to repeat it. And while all the things that the defendant said up here about the policy behind the Rape Shield Act are true, but the policies behind it being not humiliating the victim, the central purpose for the enactment of the Rape Shield Act was the misogynistic state of the common law. That is the reason that the Rape Shield Act or some version of it has been enacted in the 50 states and there's a federal Rape Shield Act. Because under the common law, it was fair game to attack the victim based on any prior sexual relationships that she had had to attack her credibility as a witness or competency as a witness. It was absolutely fair game and there was a judgment made by your General Assembly, but also by General Assemblies across the country and by our Congress that this was unacceptable. But there's a pretty lengthy list of what crimes that the Rape Shield should apply to. Why not add murder? You use it all the time in murder rate prosecutions, correct? I mean, it's a pretty common charge, both of them. So why wouldn't they just add it? Well, this was a sexual assault prosecution in addition to being a murder prosecution. So certainly at the time that pretrial of this was being discussed, this was a sexual assault case. So it was clearly applicable. And even before we get into the merits of how it applies. What would happen if we reversed the murder conviction and sent it back for a new trial and now there will not be a criminal sexual assault prosecution? Would the Rape Shield statute apply in that situation? Just to a murder case? I would say that it would because the law that's developed in our state with respect to both the statute itself but also to basic relevance is that we can't just attack the victim based on past sexual conduct. That's not fair game anymore. That's not relevant. And the defendant had the opportunity in the briefs and even here today to explain how this was relevant in any way, shape, or form to the defense theory of the case. It's not. It's not even. It's not. It's a non-starter. It wasn't the defense that somebody else killed her. Yes. And it was probably one of the many men that she was having sex with. Wasn't that really the theory? Or supposedly she was getting drugs from. Sure. But wasn't that the defense? Well, that wouldn't be a very good defense in this case because, for instance, with respect to Larry Mays, the DNA evidence completely excludes him. Right. With respect to Jeffrey Miles, the DNA evidence completely excludes him. So these are the two individuals that supposedly had sexual relations with her. Yeah, but I don't mean just within that evening, but within a sort of short timeframe before that. Well, in that case, there has to be a foundation laid. An offer of proof has to be made under the statute that is reasonably specific and detailed as to date, time, and place. And the case law says. . . I'm sorry. So you would say there wasn't really a sufficient offer of proof to even present the sentence? It's not even close. Was there some testimony, though, that there was sex within a few weeks or a month of this? Yeah, within weeks or a few months. That's. . . How is that? It's not even. . . All right. I can't even conceptualize how that's even close to being reasonably detailed as to. . . What do you think that one provision that allows introduction of prior sexual contact, where it's constitutionally required to be. What would you tell us that means? Well, in an ordinary case, and the other exception, the ordinary case would be in a sexual assault case. This might be brought in to show that on past occasions with respect to the offender, that the victim had sexual relations with that offender. And so that. . . I think that's not reasonable. That goes to consent. Yeah, I thought that would automatically. . . I'm talking about the second provision. Right, so I'm trying to. . . Given that that's one possible exception here, I'm sure there are circumstances where somehow a victim's past sexual conduct could somehow be made to be relevant to a particular theory of the case. I'm having a hard time because I'm in this case, and I. . . Well, in this case, isn't it kind of mostly circumstantial? The body's found near a house, close to where he was kind of operating out of, and the evidence of the DNA is tying him to having sex with her, and his DNA is on the suspenders that were found on her body in the, like, waste tin or whatever she was in. So it's really very much a circumstantial case, is it not? It is. He wasn't at the thing when Maria Centrone said she left and was punched in the face and fell down and then got up, right? He wasn't there, but the victim is thrown out of the house, gets up, walks away. Sure, right. So I'm just saying, there was no one ever. . . No one identified him as being with her any time that day. It's really a circumstantial case. I would. . . That's why I'm assuming. . . I'm assuming. . . Isn't this. . . I just want to point to one other piece of evidence. All right. Just one other piece of evidence that I think maybe takes it beyond just a circumstantial case, and that is it's the defendant's statements. The defendant's statements are very telling in this case. He tries to distance himself from being a resident of a house. . . I forgot about those. Okay. The house on 110th South Normal, which Maria Centrone says is his house, and he tries to completely . . . When he's first asked by the police if he lives there, oh, no, no, no, I've just gone there a couple times with my sister. My mom died in 2003 or something like that. I've been there a couple times with my sister. So he completely tries to . . . He knows. He knows. What else does he say? Then later on, he shifts his story because the detectives point out, do you know Maria Centrone? Uh-oh. So now he shifts his story to, oh, yeah, I was at that location. I was kind of working security. There were some rehabbers working over there in March, and I was kind of keeping an eye on the house. And then eventually he shifts his story to, oh, yeah, I was there in October too, but I was just working security. He denies that this is his residence, even though Maria Centrone says it's his residence, even though two weeks after the offense in this case, the defendant tells the police officer, gives the house on 110th South Normal as his address. So his statements are very telling. His statements also repeatedly deny that he knows the victim, that he's ever had any contact with her, even though the DNA evidence is overwhelming in this case that he did. He repeatedly denied that he knew her or had sex with her. Right. Okay. All right. But what does this provision envision? What is constitutionally required? There may be cases, this isn't one of them, there may be cases where it could be relevant to the defendant's theory of the case. The victim's sexual past could be relevant. It's hard for me to articulate what that case might be. Could it be for a defendant's defense? I'm sure there are cases out there. Not another case, and here's why. Delaware v. Van Arsdale is a United States Supreme Court case, and it says that the defendant's right to present a defense only extends so far as to relevant evidence. A defendant is not allowed to put on any and all defense under the guise of, well, this is my defense, so I get to put on anything I want to. So a court could reasonably perhaps conclude that if someone wanted to say, well, she had sex with this other guy a month before, that that would suggest that was evidence that that person killed her. But not if it's remote. That's what I'm saying. A court could be within its limits to say, I'm not really going to let this in that she had sex with this other guy three or four weeks ago because it really doesn't tell us too much other than that she had sex. Right, because in that case it would be remote and not probative, and therefore irrelevant. So the bottom line really comes down to relevancy. Which, by the way, in the defendant's own brief here on page 15, they go through different policies behind the Rape Shield Act, and they mention it in a case here, number two. It keeps the jury focused on the relevant issues in the case, as prior sexual conduct of the victim with other individuals is often irrelevant. So this is really the main point I want to make to you, beyond the fact that this is, first of all, completely forfeited. It's forfeited in so many different ways. So let's say we say it's forfeited. Then the next issue is whether the court abused its discretion, correct? Right, and because now we're talking about plain error, which is being raised really for the first time here in this whole argument. But because we're talking about plain error, that abuse of discretion has to be plain, obvious, and clear error. It's not just simply enough to say abuse of discretion now. Because we're talking about plain error, it's not just error. It's got to be plain that the judge abused her discretion in this case. And what really did she disallow in this case? She disallowed a witness from giving a very vague and blanket statement about characterizing the sound she heard. She did not prevent that witness or the defense from going into asking that witness, in particular and with some detail, what sounds did you hear? That was not precluded from the defense in this case. Defendant didn't even bother to raise that in a post-trial motion. Defendant, when given the chance to make an offer of proof in this case, didn't make an offer of proof about what specific sounds she may have heard. And defendant essentially abandoned this issue by not asking those questions. Had the opportunity to ask these questions, defendant abandoned this issue by not asking those questions at trial. You said the statute doesn't envision evidence regarding sexual contact of a person who's deceased. How do you respond to counsel's argument that if you read the murder statute and actually there's nothing in the rape shield statute that references, you know, that the victim is dead or alive, how do you respond? I think the question then becomes how does the victim's death make the evidence more relevant? If the evidence isn't relevant to begin with, the victim's death doesn't make it more relevant. And that's really the bottom line here. The defendant is posing a particular argument based on certain policies that underlie the rape shield statute. My presentation to you is all about relevance, because that is also in the main thrust of why the rape shield statute exists. And if this evidence isn't relevant, it doesn't matter ultimately whether the victim is alive or dead. It's still irrelevant. And defendant has absolutely failed to show relevance in this case. And in fact, defendant had the opportunity to show whatever relationship that the defendant wanted to show between Jeffrey Miles and Larry Mays. Defendant was able to develop that at trial. Defendant wasn't hindered in presenting their theory of their case to the jury in this case. And I just want to point out, Jeffrey Miles is the reddest of red herrings anyway. Nobody even has him at the house on Wallace. His only contact with the victim apparently was that he had supposedly had sex with her in weeks or months, but nobody knows when. So he wasn't there the night of the gathering. He wasn't at the house at Wallace. No one puts him there. Certainly no one testifies that he was there that night. He's a red herring. The DNA evidence completely excludes him. So the jury rejected the defense theory of the case, not because they weren't allowed to get into irrelevant evidence that was barred by the trial court, but frankly because it was weak. The defense theory of the case was weak, and the jury properly rejected it based on the evidence that was before the court. If there's no other issues with respect to Issue 1, defendant's raising Issue 2, and if this Court, begging this Court's indulgence, if it's necessary for me to go into Issue 2, I will. I fully briefed it, but. No, I think it was covered. Okay. I think it was covered, sir. With respect, then, the people ask that this Court affirm defendant's conviction in this case. Thank you, Mr. Walters. Ms. Gill. Just shortly in rebuttal, I want to address some of what I would call a mischaracterization of what the evidence was. The house on South Normal, 26, was where the bodies found. The house that his mother owned was 36. It was boarded up. He could not enter through the front or back door. Maureen Centrone testifies he entered through the window. That's a criminal trespass to residence. He didn't have authority to do that. And he was also engaging in criminal activity because it's prostitution. So at the time he talks to the police. Maureen Centrone now was a prostitute? No, but he's engaging. No, I would claim that. But I think what the State was arguing was that, you know, it was euphoric sex that he had with the victim. And it was sex gone bad, and he strangled her. And that was the theory, because remember now, in the State's motion for proof of other crimes. The medical examiner testified that it was strangulation, didn't he? Yes. He or she? I can't remember if it was Dr. Kellen. Yes, they did. And then remember that the State's motion for the other crimes evidence, Maureen Centrone testified in 2003, he tried to strangle her on the back porch of that residence. So what I'm saying in context of the EII, the electronic recorded interrogation, when he's denying, when he, you know, says it's his residence, put it in time. He's being interrogated by police. Most Johns don't know the name of the prostitutes that they are having consensual sex with. So it's explained that way. But going also back to the suspenders, this DNA, the analyst never said it was a match. On cross, the trial attorney brought up the fact that at the D18 locus, Jeffrey Miles was present. Okay, so this DNA evidence is not strong. This is close. This is truly a circumstantial. And what the jury found him guilty of could be a combination of the fact that the defense was handicapped in presenting their defense. May I ask you about Mr. Conner's suggestion that your -- Walters. Walters, pardon me. Pardon me. He was on the last case. Mr. Walters, I apologize. He argues that what difference does it make if this woman is dead? Why should the purpose be negated when the purpose behind the statute is about the victim? And actually, there were many, many reasons why the legislature enacted the Rape Shield Act. And we don't need to get into it here and now. But what is your response to his point that the overarching purpose of it is directed at the victim, and what difference does it make if she's dead or alive? Because the statute doesn't permit the interrogation of the victim about prior sexual contact. So why should we concern ourselves with the fact that the language doesn't include a live victim versus a deceased person? Because the fundamental rights of a living man who is the accused under Chambers v. Mississippi and Davis v. Alaska outweigh the privacy interests of the deceased. Do they outweigh the relevancy interests? No. And that's why even if you look at 403, again, the Court should have done 403. It is actually a different standard because it's excluded if its proliferative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues. All right. And the defense of emergency. Don't you need, though, don't you need an offer of proof? And, you know, we're kind of familiar with Davis' case. Well, I would say that I mean, considering what was presented that didn't get to be presented at that defendant's trial, not only were there witnesses present and alive and well and willing to testify, there was substantial evidence that was kept out. But here, and there was offers of proof about additional evidence. Now, here, don't you have to have an offer of proof to show us what actually was prevented from coming in, even if we forget about that she was deceased? I agree, Your Honor. But at this point, I also concede that the defense attorney, the trial attorney, didn't even consider the plain language of the statute and in many ways committed ineffective assistance of counsel because he assumed, he asked the judge at the motion in Lemonet, are we talking about the rape shield? Okay. And even though he objects to it in his motion for new trial, and he specifically refers to Sam, Jeffrey Miles and the byline of his testimony, which meant when you look at the totality of the record, he also had one of the mazes under subpoena and he didn't present it. And so here's the thing. You're talking about the constitutional right to present a defense, but clearly the defense attorneys throughout the state have never thought to look at the plain language and as an appellate attorney felt, wait a minute, it's silent. And so he wasn't. I felt your pain. I know. And so I'm saying that this court should not punt the legal issue and say it's barred, it's forfeited. We have two jurisdictions, the Johnson decision. This case, in light of what's going on in New Hampshire, is going to appear again. Why don't we resolve the issue, rule on it. I understand you're looking at is it harmless error in light of Illinois Rule 403 and 401, but I will also point out Illinois Rule of Evidence 404, Section 3. Character of a witness, evidence of the character of a witness where they do allow other crimes, wrongs or acts may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absent of mistake or accident. And I'm saying let the judiciary rely on rules of evidence instead of carving out an exception in a statutory enacted legislation. What I'm saying is do not abdicate your responsibility as judges. Don't violate separation of powers. Thank you very much, Ms. Gill. Thank you, both counsel. It was well briefed and well argued. We'll take it under advisement.